**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Elizabeth Oyer,
Plaintiff,

v.

Todd Blanche, Attorney General
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530;

and

U.S. Department of Justice,
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Defendants.

Case No. ___________

**COMPLAINT**

1. Plaintiff Elizabeth Oyer was an exemplary public servant. Notwithstanding this—and, in fact, because of it—she was unlawfully removed from government service.

2. In early 2025, Ms. Oyer was serving as the Pardon Attorney, a career position at the U.S. Department of Justice ("DOJ"). Shortly after President Trump took office, Ms. Oyer was asked to disregard her duties and facilitate a political favor for the actor Mel Gibson, based on Mr. Gibson's relationship with President Trump. Ms. Oyer was asked to make it seem like an independent review had concluded that Mr. Gibson, who was convicted of a domestic violence offense, should have his gun rights restored.

3. Ms. Oyer declined. Shortly after, she was fired by then-Deputy Attorney General Todd Blanche.

4. In removing Ms. Oyer, DOJ made no pretense of adhering to statutorily mandated procedures, which required DOJ to provide Ms. Oyer with notice and an opportunity to be heard. Nor did DOJ purport to remove Ms. Oyer for any statutorily allowable reason. Instead, Mr. Blanche issued Ms. Oyer a terse notice purporting to remove her pursuant to Article II of the Constitution.

5. This removal was unlawful. It violated Ms. Oyer's constitutional due process rights and her rights under the Civil Service Reform Act ("CSRA"). It also violated her First Amendment rights because the removal was taken, in part, based on Ms. Oyer's perceived political affiliation. And it violated core separation of power principles, because "Article II" does not give DOJ carte blanche to disregard removal protections mandated by Congress.

6. Worse still, DOJ did not even use the procedures that DOJ itself maintains are necessary to effectuate a removal under Article II. DOJ's own longstanding position is that only the Attorney General personally can remove officials from the Department of Justice under Article II. But Ms. Oyer was removed by the *Deputy* Attorney General, Mr. Blanche, *not* the Attorney General, who at the time was Pamela Bondi. Thus, even on DOJ's own (overexpansive) conception of Article II removal authority, Ms. Oyer's removal was ineffectual.

7. Ms. Oyer now brings this action to challenge that removal and to vindicate her rights.

**PARTIES**

8. Plaintiff Elizabeth Oyer served as the Pardon Attorney at the U.S. Department of Justice from April 2022 until March 2025, at which point she was unlawfully removed from her position. Ms. Oyer began her career with the federal government in September 2012.[1] Between

[1] Ms. Oyer also has previous federal employment as a judicial law clerk from September 2004 to October 2005.

September 2012 and March 2022, she served as an Assistant Federal Public Defender and then Senior Litigation Counsel in the Office of the Federal Public Defender for the District of Maryland. Ms. Oyer resides in the District of Columbia.

9. Defendant Todd Blanche is sued in his official capacity as Attorney General of the United States. When Mr. Blanche purported to remove Ms. Oyer, he was serving only as the Deputy Attorney General, not the Attorney General.

10. Defendant DOJ is headquartered in Washington, D.C. and is an agency of the United States within the meaning of 29 U.S.C. § 633(a).

**JURISDICTION AND VENUE**

11. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

12. Venue is proper under 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e), because at least one Defendant resides in the district, a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants are agencies of the United States and officers or employees of the United States acting in their official capacities.

**FACTUAL ALLEGATIONS**

**The Role of the Pardon Attorney**

13. The Pardon Attorney role originated in an 1865 statute that allowed the Attorney General to employ a "fourth-class pardon clerk." Act of March 3, 1865, 13 Stat. 516. The current position of Pardon Attorney is described in DOJ regulations and the Justice Manual, a DOJ policy manual. 28 C.F.R. §§ 0.35, 0.36, 1.1-1.11; DOJ, Justice Manual Ch. 9-140.000 – Pardon Attorney, https://perma.cc/8ARG-WMJA.

14. The Pardon Attorney is responsible for processing applications for clemency and making recommendations "[u]nder the general supervision of the Attorney General and the

direction of the Deputy Attorney General." 28 C.F.R. §§ 0.35, 1.6. All of the Pardon Attorney's recommendations are sent to the Deputy Attorney General, who "exercise[s] such discretion and authority as is appropriate and necessary for the handling and transmittal of such recommendations to the President." 28 C.F.R. § 0.36.

15. The Deputy Attorney General is not bound by the Pardon Attorney's recommendations.

16. The President, who makes the final decision on whether to grant clemency, is not either. The President is free to consider petitions and grant or deny them without any DOJ involvement at all. *Id*. § 1.11 (regulations are "advisory only" and do not "restrict the authority granted to the President under Article II, section 2 of the Constitution"). Indeed, several high-profile and high-volume clemency grants have not been routed through the Pardon Attorney's office.[2]

**The Senior Executive Service and Due Process Protections**

17. In April 2022, Ms. Oyer was appointed as the Pardon Attorney. Her appointment was to a career position (as contrasted with a non-career, political appointee position) within the Senior Executive Service ("SES").

18. The SES consists of senior government officials who share a broad set of responsibilities to help lead the work of the Federal Government.

---

[2] *See, e.g.,* Marisa Taylor, Chris Prentice, Kaylee Keng & Allison Martell, *How to get a Trump pardon: Forget the DOJ, call "Bobby" and other influencers*, Reuters (June 11, 2026), https://perma.cc/F8C4-UJWE; Beth Reinhard & Anne Gearan, *Most Trump clemency grants bypass Justice Dept. and go to well-connected offenders*, Wash. Post (Feb. 3, 2020), https://archive.ph/CFSFy; Kyle Cheney & Betsy Woodruff Swan, *The Hunter Biden pardon gives Donald Trump powerful new political cover*, Politico (Dec. 3, 2024), https://perma.cc/B8QJ-PNA4 (reporting that the Office of the Pardon Attorney "was taken by surprise").

19. "[T]o ensure that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality," 5 U.S.C. § 3131, Congress mandated several foundational principles of the SES, including to "protect senior executives from arbitrary or capricious actions," *id.* § 3131(7); "maintain a merit personnel system free of prohibited personnel practices," *id.* § 3131(9); and "provide for an executive system which is guided by the public interest and free from improper political interference," *id.* § 3131(13).

20. As part of this design, Congress provided that career members of the SES who have completed their one-year probationary period can only be removed from the civil service for certain enumerated reasons. Specifically, career SES members may be removed "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *Id.* § 7543(a).

21. Further, an agency may only remove a career member of the SES by following certain procedures, namely, providing 30 days' advance written notice of the removal, providing at least seven days to respond, and issuing a written decision specifying the reasons for the removal. *Id.* § 7543(b).

22. Career members of the SES are also protected from prohibited personnel practices, such as whistleblower retaliation and discrimination based on political affiliation. *See id.* §§ 2302(a)(2)(B), (b)(1)(E), (8), (9)(D), (10).

23. In April 2023, one year after her appointment as Pardon Attorney, Ms. Oyer completed her probationary period, thus accruing the due process protections that Congress put in place to "to ensure that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation." 5 U.S.C. § 3131.

**Ms. Oyer's Refusal to Disregard Her Duties**

24. From the time of her appointment, in April 2022, to the time of her removal, in March 2025, Ms. Oyer performed her duties as Pardon Attorney with the highest degree of competence and dedication. During the entirety of her time as Pardon Attorney—and, in fact, during the entirety of her 13-year career in federal service—Ms. Oyer received exemplary performance reviews throughout her federal service.

25. Her extraordinarily high performance—and her commitment to carrying out her duties lawfully—led to her termination.

26. Shortly after President Trump was inaugurated, Ms. Oyer was placed on a working group charged with generating a list of individuals whose gun rights were lost due to criminal convictions, but who merited being considered for having their gun rights restored by the Department of Justice.

27. This was an unusual task for the Office of the Pardon Attorney, but Ms. Oyer accepted the assignment, and her Office developed an initial list of approximately 95 candidates consisting of individuals whose convictions were for nonviolent offenses and were very old, who had asked for the restriction to be lifted as part of a pardon application, and who had undergone thorough investigation and vetting, leading Ms. Oyer's Office to determine that they had a low risk of recidivism.

28. The list of approximately 95 candidates was provided to the Office of Deputy Attorney General Blanche. Mr. Blanche's staff cut the list of candidates down to nine, and asked Ms. Oyer to draft a memo recommending that those nine individuals have their gun rights restored. Ms. Oyer drafted the memo, as requested.

29. Mr. Blanche's staff then came back to Ms. Oyer with another request: they asked her to add the actor Mel Gibson to the list. Ms. Oyer learned that Mr. Gibson had lost his right to

own a gun following his conviction for a domestic violence crime[3] and that Mr. Gibson had asked the Attorney General to exercise her statutory authority to reinstate his gun rights.

30. Ms. Oyer had serious concerns about the public safety implications of granting Mr. Gibson's request in light of his history of domestic violence and the well-documented dangers of placing firearms in the hands of domestic abusers. DOJ itself is clear about this concern. In announcing its "Resource Guide for Addressing the Intersection of Domestic Violence and Firearms," DOJ noted, "Over half of the women murdered in the United States are killed by a current or former intimate partner. The presence of firearms significantly escalates the danger in relationships where there is domestic violence by increasing the risk of homicide by 500%."[4]

31. Further, unlike the other individuals on the recommended list for gun rights restoration, who had undergone a significant amount of background investigation, Mr. Gibson had not been investigated, and Ms. Oyer's staff was not able to assess his likelihood of recidivism.

32. On March 6, 2025, in an email, Ms. Oyer communicated her concerns to Mr. Blanche's staff and indicated that she could not recommend that the Attorney General restore Mr. Gibson's gun rights.

---

[3] *See, e.g.*, Shan Li, *Mel Gibson pleads no contest in domestic abuse*, L.A. Times, Mar. 12, 2011, https://perma.cc/92JV-KY85 (noting accusation that Mr. Gibson had "punched" his ex-girlfriend Oksana Grigorieva "and threatened her with a gun as she held their daughter" and that recordings revealed Mr. Gibson "telling Grigorieva that she 'deserved' the assault" and engaged in "racist, profane rants"); *see also* Miranda Siwak, *Mel Gibson Says He's 'Planned A Lot of Murders in My Life' In His Head for Movie Production*, Jan. 10, 2025, https://perma.cc/CX9L-XMD6 (quoting Mr. Gibson as having said, "In your head, you plan them and you think, 'Well, that's not a very good idea, but I think I can get away with it.'").

[4] *See, e.g.*, Dept. of Justice, Office on Violence Against Women, *Announcement: Resource Guide for Addressing the Intersection of Domestic Violence and Firearms* (updated Aug. 14, 2025), https://perma.cc/RD48-ZDWG.

33. Later the same day, a senior official on Mr. Blanche's staff called Ms. Oyer and urged her to recommend reinstatement of Mr. Gibson's gun rights anyway in consideration of the fact that Mr. Gibson had a personal relationship with President Trump. The official employed a bullying tone and suggested to Ms. Oyer that she would be wise to make the recommendation.

34. The next day, March 7, 2025, Ms. Oyer sent a new draft memo to the Attorney General's office. The memo did not recommend that Mr. Gibson have his gun rights restored. It instead indicated that Ms. Oyer did not know the particulars of Mr. Gibson's case and that the decision was ultimately the Attorney General's.

35. A few hours later, Ms. Oyer was in an unrelated meeting when a colleague pulled her out of the meeting and advised her that DOJ security officers were waiting in her office to deliver her termination papers. Ms. Oyer returned to her office, where two DOJ security officers handed her a memo from Mr. Blanche, instructed her to pack up her personal belongings, and escorted her out of the building.

36. The memo was from "THE DEPUTY ATTORNEY GENERAL" and was signed by Mr. Blanche. It stated:

> This memorandum serves as official notice that you are removed from your Senior Executive Service (SES) position of Pardon Attorney, Office of the Pardon Attorney, and from federal service, effective immediately. Pursuant to Article II of the Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated.

*See*, Memorandum for Elizabeth G. Oyer (March 7, 2025), attached as Exhibit 1.

**Ms. Oyer's Termination Was Unlawful**

37. DOJ's removal of Ms. Oyer was unlawful for several independent reasons.

38. Non-probationary SES employees, like Ms. Oyer, may be removed from federal employment "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a). And they

may be terminated only after being provided with 30 days advanced written notice of the proposed termination, an opportunity to respond, and a final written decision. *See id.* § 7543(b). These statutes provide SES employees with a constitutionally protected property interest in their employment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985); *see also Esparraguera v. Dep't of the Army*, 101 F.4th 28 (D.C. Cir. 2024).

39. DOJ terminated Ms. Oyer without any pretense of compliance with these statutory and constitutional requirements. The terse notice that purported to remove her did not specify any cause for the removal, much less one allowed by 5 U.S.C. § 7543(a). Nor did DOJ provide Ms. Oyer with her statutory and constitutional right to receive pre-termination review. *Id.* § 7543(b).

40. Instead, the removal notice said it was "effectively immediately" and merely stated that the termination was "[p]ursuant to Article II of the Constitution and the laws of the United States." *See* Exhibit 1.

41. Article II of the Constitution does not give any Executive branch official the authority to disregard Ms. Oyer's statutory removal protections.

42. Rather, the Supreme Court has long upheld removal protections for subordinate officials appointed by a Department Head, rather than the President. It has certainly never suggested that an official like the Pardon Attorney, who exercises no policymaking authority and whose functions are purely recommendary, must be removable by the Department Head at will.

43. With respect to its purported removal of Ms. Oyer, moreover, DOJ did not even use the procedures that DOJ itself maintains are necessary to effectuate a removal under Article II. That is because Ms. Oyer's removal notice was signed only by the *Deputy* Attorney General.

44. This distinction is significant because—on DOJ's own telling—only the Attorney General can wield the President's Article II removal authority. As DOJ has argued in recent

litigation attempting to defend a different Article II removal, any attempt by a lower ranking official to effectuate an Article II removal is "void *ab initio*." *See* Exhibit 2 at 5; *see also Appointment and Removal of Federal Reserve Bank Members of the Federal Open Market Committee*, 43 Op. O.L.C. 263, 282 (2019) ("[T]he authority to remove inferior officers may not be delegated to an agency official other than the department head, or another official constitutionally competent to appoint that officer in the first place."); *Constitutionality of the Foreign Service Grievance Board's Oversight Authority*, 50 Op. O.L.C. – (Aug. 20, 2026). Yet that is precisely what happened with respect to Ms. Oyer's removal: she was purportedly removed by the Deputy Attorney General, not the Attorney General.

45. Moreover, Ms. Oyer's termination was further unlawful in that it discriminated against Ms. Oyer on the basis of political affiliation, because, on information and belief, it was based on DOJ's perception that Ms. Oyer, who was hired during the Biden Administration, was not politically affiliated with the current Administration. Indeed, when Ms. Oyer declined to disregard her duties in order to perform a favor for her politically-appointed superiors and President Trump, she was summarily terminated.

46. Ms. Oyer promptly attempted to vindicate her rights. On April 3, 2025, she filed an appeal challenging her unlawful termination at the Merit Systems Protection Board ("MSPB"), the agency that Congress created to adjudicate certain federal personnel claims. *See* 5 U.S.C. § 1204.

47. The MSPB has proved, however, to be a dead end. Despite filing her MSPB appeal more than sixteen months ago, she has yet to receive any substantive review of her termination. Most recently, on June 2, 2026, the MSPB dismissed Ms. Oyer's appeal without prejudice for a minimum of an additional six months (and likely far longer), sending her case to a further prolonged limbo.

48. In March 2026, the MSPB also issued a decision broadly holding that it lacks jurisdiction in many cases in which the appellant employee was removed in a purported exercise of Article II authority, rather than pursuant to the CSRA. *See Jackler & Jaroch Consolidated v. DOJ*, Docket No. CF-0752-26-0069-I-1 (MSPB Mar. 20, 2026), https://perma.cc/8EP8-VL6E. It thus now seems clear that the MSPB, were it ever to even consider Ms. Oyer's appeal, would conclude it lacks jurisdiction over Ms. Oyer's case since DOJ did not purport to remove Ms. Oyer pursuant to the CSRA—the statute that provides the MSPB with jurisdiction—but rather pursuant to its purported authority under Article II of the Constitution.

49. Because DOJ purported to remove Ms. Oyer pursuant to the Constitution, not the CSRA, Ms. Oyer therefore brings this action in federal court to hold DOJ accountable for its gross violation of her constitutional and statutory rights.

**COUNT I**
**Violation of the Fifth Amendment of the United States Constitution**
**(Due Process)**

50. Plaintiff realleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

51. The Due Process Clause of the Fifth Amendment to the U.S. Constitution guarantees that "no person shall . . . be deprived of life, liberty, or property, without due process of law."

52. Ms. Oyer had a protected property interest in her continued employment with DOJ, due to the protections afforded her by the Civil Service Reform Act.

53. Defendants removed Ms. Oyer without adherence to the CSRA's due process protections and, indeed, without any advanced notice or opportunity to be heard. This removal of Ms. Oyer without due process unlawfully deprived her of that property interest and violated her Fifth Amendment rights.

**COUNT II**
**Violation of the First Amendment of the United States Constitution**

54. Plaintiff realleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

55. The First Amendment to the U.S. Constitution protects the right to association for purposes of engaging in speech or other expressive purposes, including political affiliation.

56. Defendants terminated Ms. Oyer based on her actual or perceived political affiliation, because Defendants believed that Ms. Oyer was not politically aligned with the current Trump Administration.

57. Defendants' termination of Ms. Oyer thus violated her First Amendment rights.

**COUNT III**
**Violation of the Appointments Clause and Article II of the U.S. Constitution**

58. Plaintiff realleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

59. Under the Appointments Clause of U.S. Constitution, Congress may vest in the Head of an Executive Department the power to appoint inferior officers. *See* U.S. Const art II, sec. 2, cl. 2. Inferior officers are subordinate officials who occupy continuing positions and exercise significant authority pursuant to the laws of the United States. *See, e.g.*, *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018).

60. The Head of the Department for the U.S. Department of Justice is the Attorney General. *See* 28 U.S.C. § 503. The Attorney General's authority to appoint inferior officers within the U.S. Department of Justice is paired with non-delegable authority over the removal of inferior officers at DOJ. *See Appointment and Removal of Federal Reserve Bank Members of the Federal Open Market Committee*, 43 Op. O.L.C. 263, 282 (2019) ("[T]he authority to remove inferior officers may not be delegated to an agency official other than the department head, or

another official constitutionally competent to appoint that officer in the first place.”); *Constitutionality of the Foreign Service Grievance Board’s Oversight Authority*, 50 Op. O.L.C. – (Aug. 20, 2026).

61. Plaintiff was removed by then-Deputy Attorney General Blanche, not the Attorney General.

62. While Plaintiff does not concede that the Pardon Attorney exercises significant authority pursuant to the laws of the United States or that she was an inferior officer, DOJ has justified Plaintiff’s termination on the grounds that she was an inferior officer and thus (DOJ claims) must be removable at will. *See, e.g.*, Exhibit 3 [Tab 5, Oyer v. DOJ, Docket No. DC-0752-25-2372-I-2 (MSPB Jun. 1, 2026)].

63. DOJ is wrong that inferior officers must be removable at will. *See, e.g.*, *Myers v. United States*, 272 U.S. 52, 161 (1926) (explaining that Congress’s power to regulate a Department Head’s removal of inferior officers is “incidental” to Congress’s power to decide whether to authorize the Department Head to appoint the inferior officer in the first place); *Morrison v. Olson*, 487 U.S. 654 (1988) (upholding removal protections of an inferior officer).

64. But more fundamentally, DOJ’s argument is self-defeating. Because Plaintiff was purportedly terminated by the Deputy Attorney General, her removal was invalid and void ab initio.

**COUNT IV**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B)**
**(Contrary to Constitutional Right, First and Fifth Amendments)**

65. Plaintiff realleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

66. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

67. Ms. Oyer's termination is final agency action that is contrary to Article II of and the First and Fifth Amendments to the U.S. Constitution, and therefore violates the APA.

**COUNT V**
**Separation of Powers**

68. Plaintiff realleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

69. Ms. Oyer's termination violated the CSRA's due process protections. In flouting these provisions, Defendants usurped Congress's legislative authority, which the Constitution vests to Congress in Article I.

70. No member of the Executive Branch can usurp Congress's legislative authority by executive fiat, and no member of the Executive Branch has the constitutional power to enact, amend, or repeal parts of duly enacted statutes.

**COUNT VI**
***Ultra Vires***

71. Plaintiff realleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

72. Defendants had no lawful authority to terminate Ms. Oyer from federal service without adhering to the statutory protections afforded to her. Her termination was therefore *ultra vires* and without legal force or effect.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Declare that Defendants have violated Ms. Oyer's constitutional and statutory rights;

2. Declare that Defendants violated the Separation of Powers and that their action was *ultra vires*;
3. Declare that the Removal Notice was void ab initio and failed to legally effect Ms. Oyer's removal;
4. Declare that Defendants' reliance on Article II as a basis for removal was invalid;
5. Order Ms. Oyer's reinstatement;
6. Upon reinstatement, enjoin Defendants from withholding any pay and benefits to which Ms. Oyer is entitled;
7. Enjoin Defendants from taking any further adverse personnel action against Ms. Oyer without providing appropriate procedural and substantive due process as required by law and the Fifth Amendment;
8. Award other relief that the Court deems just and proper.

Respectfully submitted,

/s/ *Joshua M. Salzman*

Joshua M. Salzman (DC Bar No. 982239)
Webb Lyons* (DC Bar No. 1035458)
Elena Goldstein (DC Bar No. 90034087)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Facsimile: 202-796-4426
jsalzman@democracyforward.org
wlyons@c.democracyforward.org*
egoldstein@democracyforward.org
**Of Counsel*

Dated: September 3, 2026

*Attorneys for Plaintiff*